**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | |
| **DION WILLIAMS** | * | **Case No. 3:12-cr-047** |
| **Defendant** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**DEFENDANT'S MOTION, PURSUANT TO FED. R. CRIM. P. 21(B), TO TRANSFER
ACTION TO THE DISTRICT OF MARYLAND FOR THE CONVENIENCE OF THE
PARTIES AND WITNESSES, OR, IN THE ALTERNATIVE, MOTION TO DISMISS
COUNT TWO FOR IMPROPER VENUE**</u>

Defendant Dion Williams, by and through counsel, John LaFratta, and Kenneth Ravenell and Milin Chun of Murphy, Falcon & Murphy, pursuant to Federal Rule of Criminal Procedure 12(b)(3), hereby respectfully moves this Court for an order transferring this entire case to the United States District Court for the District of Maryland, pursuant to Federal Rule of Criminal Procedure 21(b), for the convenience of the parties and witnesses and in the interest of justice. In the alternative, Mr. Williams respectfully seeks an order from the Court dismissing Count Two for improper venue. In support of the Motion, Mr. Williams submits the following incorporated Memorandum.

**INTRODUCTION**

Mr. Williams is charged by Indictment with conspiracy to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and attempt to possess with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. *See* Doc. 50 (Indictment) at 2, 10.

While some minor acts were committed by an alleged co-defendant and two government

cooperators in the Commonwealth of Virginia, Mr. Williams is not alleged to have committed any act in Virginia.[1]   Indeed, all of Mr. Williams' alleged conduct was committed in the District of Maryland.[2]   For the reasons expressed below, the entire case should be transferred to the United States District Court for the District of Maryland, or, in the alternative, Count 2 must be dismissed because proper venue does not lie in Virginia.

## ARGUMENT

Proper venue in a criminal prosecution is a constitutional right.  A defendant in a criminal case has a *constitutional right* to be tried in a proper venue.  *See United States v. Johnson*, 323 U.S. 273, 275 (1944) (noting that two constitutional provisions, Article III, 2, cl. 3[3] and the Sixth Amendment[4] both provide a right to trial in the state where the crime is committed); *see also* Fed.R.Crim.P. 18 ("Except as otherwise permitted by statute or these rules, the prosecution shall be had in a district in which the offense was committed.").  These constitutional safeguards are meant to "protect the defendant from bias, disadvantage, and *inconvenience* in the adjudication of the charges against him." *United States v. Ebersole,* 411 F.3d 517, 524 (4th Cir. 2005) (emphasis added).  In light of these constitutional protections, the Supreme Court has cautioned that "[q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed." *Johnson*, 323 U.S. at 276; *see also United States v. Martinez*, 901 F.2d 374, 376 (4th Cir. 1990).

Venue in a criminal case is determined by the "nature of the crime alleged and the

---

[1] Neither of the remaining co-defendants is alleged to have committed any acts in Virginia.

[2] The same is true of the remaining co-defendants.

[3] "The Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed."

[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury *of the State and district wherein the crime shall have been committed.*"

[2]

location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703 (1946).

When Congress has not expressly provided where venue is appropriate, the court must decide

based upon the statutory language:

> When ... the statute defining the substantive offense "does not
> indicate where Congress considered the place of committing the
> crime to be, the *locus delicti* must be determined from the nature
> of the crime alleged and the location of the act or acts constituting
> it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213
> [1216], 90 L.Ed. 1529 (1946) (citations omitted). In determining
> the act or acts constituting the crime, we have commonly focused
> on the verbs employed in the statute defining the offense.

*United States v. Blecker,* 657 F.2d 629, 632 (4th Cir.1981).   As the Supreme Court has

instructed, "[i]n performing this inquiry, a court must identify the conduct constituting the

offense (the nature of the crime) and then discern the location of the commission of the criminal

acts." *United States v. Rodriguez–Moreno,* 526 U.S. 275, 279 (1999); *see also United States v.

Smith,* 452 F.3d 323, 334–35 (4th Cir. 2006) (finding that venue determination is twofold

inquiry); *United States v. Bowens,* 224 F.3d 302, 311 (4th Cir. 2000) (holding "that the place

where a criminal offense is committed is determined solely by the essential conduct elements of

that offense.").   Venue is limited to the place "where the criminal act is done."   *United States v.

Bowens*, 224 F.3d 202 (4th Cir. 2000); *Anderson,* 328 U.S. at 705*; United States v. Cabrales,*

524 U.S. 1, 7–8 (1998).

The government bears the burden of proving venue by a preponderance of the evidence

that the crime occurred in the district where prosecuted.  *See United States v. Barsanti,* 943 F.2d

428, 434 (4th Cir. 1991).

[3]

I.    **THIS COURT SHOULD TRANSFER THE CASE TO THE DISTRICT OF MARYLAND FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES.**

While this Court previously, *sua sponte*, addressed briefly the issue of convenience in deciding Mr. Zenon's motion for change of venue, as the Court noted, the matter was not briefed by either party so the Court was without the benefit of either parties arguments, knowledge of the facts in support of transfer or any research conducted by either party.  More importantly, Mr. Zenon never moved for transfer of the case based on convenience, and this Court noted in its decision denying transfer that it was, in part, based on the "absence of any other arguments in support of transfer." *See* Doc. 149 at 8.

Venue transfer in federal court is governed by Federal Rule of Criminal Procedure 21(b), which instructs that "[f]or the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding *as to that defendant* or any one or more counts thereof to another district."  As the language of the rule itself makes plain, the Court may transfer all or part of a case when it believes that doing so will serve the convenience of parties and witnesses and the interest of justice.  It may transfer the case as to one defendant, but not as to others, and it may choose to transfer some charges, but not others.  In accordance with the express language of the Rule, courts frequently grant transfer motions that apply to only some of the defendants in a case.  *See, e.g., United States v. Choate*, 276 F.2d 724, 726, 729 (5th Cir. 1960) (five of seven defendants were transferred for trial from Miami to Birmingham); *United States v. Bein*, 539 F.Supp. 72 (N.D. Ill. 1982) (court granted motion to transfer trial of three of seven defendants from Chicago to New York); *United States v. Barrientos*, 485 F. Supp. 789, 789-90 (E.D. Pa. 1980) (transfer from Philadelphia to Miami granted for two of four defendants); *United States v. Aronoff*, 463 F. Supp. 454 (S.D.N.Y. 1978)

(court granted motion to transfer as to one of three defendants); *United States v. Clark*, 360 F. Supp. 936, 945-46 (S.D.N.Y. 1973) (trial of five defendants was transferred to Oklahoma City, while trial of three others remained in New York); *United States v. Erie Basin Metal Products Co.,* 79 F. Supp. 880, 885-86 (D. Md. 1948) (four of six defendants were transferred from Baltimore to the Northern District of Illinois for trial); *United States v. Jessup*, 38 F.R.D. 42, 47-48 (M.D. Tenn. 1965) (two of three defendants transferred from Nashville to Southern District of Mississippi for trial); *see also Yeloushan v. United States*, 339 F.2d 533, 536 (5th Cir. 1964) ("There is no constitutional requirement that all parties defendant in a multiple indictment be tried in the same district.").

As Judge Posner of the Seventh Circuit has written, "Nothing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing 'truly compelling circumstances' for such a change.   It is enough if, all relevant things considered, the case would be better off transferred to another district." *Matter of Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995).

The Supreme Court has also enumerated ten factors for district courts to consider when exercising its discretion to determine whether a Rule 21(b) transfer is appropriate:   (i) the location of the defendant; (ii) the location of possible witnesses; (iii) the location of the events at issue; (iv) the location of documents and records; (v) the disruption of defendant's business; (vi) the expense to the parties; (vii) the location of counsel; (viii) the relative accessibility of place of trial; (ix) the docket condition of each district; and (x) any other special elements which might affect the transfer.  *See Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240, 243-44 (1964); *see also United States v. Ferguson*, 432 F.Supp.2d 559, 562 (E.D. Va. 2006) (applying

[5]

*Platt* test and granting motion); *United States v. Donato*, 866 F.Supp. 288, 293 (W.D. Va. 1994 (same); *United States v. Hurwitz*, 573 F.Supp. 547, 551-52 (D.C.W.Va. 1983) (same).  A court considering a motion for transfer under Rule 21(b) should look to all of these factors and determine whether the *interests of justice* would be *better served* by changing the trial venue.

In the present case, the most critical factors weighing strongly in favor of transferring the case against Mr. Williams to Maryland are the location of events likely to be at issue, the location of possible witnesses, the expenses to the defendant, the location of defendant's counsel and that the three remaining defendants all have strong ties to Maryland and none to Virginia. Because of our Constitution's strong policy favoring trial where the events at issue in a criminal case occurred, courts analyzing motions seeking transfer under Rule 21(b) must determine whether the current district or the proposed transferree district constitutes the "nerve center" or "center of gravity" of the events put at issue by the Indictment. *See, e.g.*, *United States v. Haley*, 504 F. Supp. 1124, 1128 (E.D. Pa. 1981); *Clark*, 360 F. Supp. at 944-46.

**THE LOCATION OF THE EVENTS**:  The Indictment unambiguously demonstrates that this case is centered on events occurring in Maryland.  While the government may argue that a few minor overt acts were committed in the Eastern District of Virginia, a review of the Indictment demonstrates that by far the more significant acts and the majority of overt acts alleged occurred in Maryland.  *In United States v. Djeredjian*, case no. 06-cr-0041[5], a cigarette trafficking case that originated in North Carolina but concluded in California, the Court in the Eastern District of North Carolina, Western Division, discussing the acts that occurred in North Carolina concluded that the government's "focus on those acts could be described as myopic, in

---

[5] The Court's Order in *Djerdjian* is attached as Exhibit A for this Court's convenience.

light of the entirety of the conspiracy." *See* Exhibit A at 9. In reviewing the alleged overt acts, the court noted that "approximately three-fourths of the 'ways, means, and manner' allegations for the same count involve conduct in or *directed* towards California…." *Id*. Based on this fact, the court recognized that the location of events likely to be at issue favored transfer. The acts that occurred in North Carolina were far more significant that the alleged acts occurring in Virginia in this case.

In *United States v. Ferguson*, *supra*, the court found that the defendants showed "a substantial balance of inconvenience" in having the matter adjudicated in the Eastern District of Virginia because of the seventy-eight (78) overt acts alleged in the indictment, only seven (7) had anything to do with Virginia. The court rejected the government's argument that cases involving securities fraud are national in scope and therefore the location of the business transactions and creation of financial reports should not weigh in favor of the defendant. The court noted that the alleged fraudulent activity by the defendants was hatched and carried out in another jurisdiction thereby placing the crux of criminal activity outside of Virginia.

In *United States v. Donato*, *supra*, the defendants were indicted in the Western District of Virginia and charged with conspiracy to defraud a Texas-based insurance company. The case was transferred because the court found that "the only overt act committed by the conspiracy touching upon th[at] district [was a] phone call from Defendant ..., presumably made from ... Virginia[,]" and that connection was too remote to remain in that district. *Id*. at 294. Additionally, "[t]he insurance company victimized by the Defendants' alleged fraud is based in Texas" and not in that district. I*d*.

Similarly, in the instant case, independent of the travel arrangements into Richmond

[7]

International Airport by a co-defendant and two government cooperators, the majority of the manner and means of the conspiracy focuses on Maryland as well as the acts that constitute the substantive count.  In other words, the "nerve center" or "center of gravity" of the events put at issue by the Indictment takes place in Maryland and not Virginia.  The Indictment confirms that the trial of the allegations against Mr. Williams will be overwhelmingly, if not exclusively, centered on events occurring in Maryland.  The co-defendant and the cooperators (the sellers) allegedly first met Mr. Williams (the alleged buyer) at a Hyatt Hotel in Owings Mills, Maryland, the parties then allegedly drove from the hotel to an apartment in Maryland, the agents allegedly surveilled the meeting at this apartment in Maryland, the cooperators made recordings of this meeting in Maryland, and the monies were allegedly counted at 4658 Riverstone Drive, Apartment 201 in Owings Mills, Maryland[6], which was subsequently searched by Maryland DEA agents and Task Force members pursuant to a warrant signed by a Maryland court judge.[7] Approximately $1.5 million was found and seized in that apartment in Maryland and Mr. Williams and the two other remaining defendants were found and arrested in that apartment. Where as here, most, if not all, of the acts and conduct in furtherance of the alleged conspiracy

---

[6] The location of the searched apartment is critical in both the motion to suppress and at trial.  A viewing of the apartment may become important and relevant because Mr. Williams contends that it is impossible for the officers to have determined which apartment corresponded with the garage door that the confidential source entered.  It is axiomatic that it will be much easier for a judge and a jury in Maryland to view this location if it becomes necessary as the defendant believes it will.

[7] Peculiarly, there were two search warrants issued for the search of this residence.  Judge Patrick Cavanaugh of the Circuit Court for Baltimore County signed a search and seizure warrant submitted by Officers Edward Hann and George Vigue at approximately 6:19 pm.  At 9:20 pm, Magistrate Judge Susan Gauvey of the United States District Court for the District of Maryland signed a separate search and seizure warrant for the same residence.  This fact may also become an issue in determining the motion to suppress and at trial and since both judges reside in Maryland, thus further supporting transfer of this case to Maryland.

and the substantive count occurred in the proposed transferee district and it appears that this was the "nerve center" of the alleged illicit operations, this weighs strongly in favor of transfer. *See United States v. Alter*, 81 F.R.D. 524, 526 (S.D.N.Y. 1979).

While this Court has previously noted that a "special consideration affecting the transfer analysis", *see* Doc. 149 at 7, is the fact that five defendants have already pled guilty, as set forth above, the rule is clear that this Court can transfer as to one defendant or some defendants, but not others.[8]   More importantly, the three remaining defendants all have strong ties to Maryland and none to Virginia and none of those three defendants allegedly committed any act in support of the charged conduct in Virginia.   Additionally, by the time Mr. Williams and the remaining defendants appear for trial on January 22, 2013, each of these pleading defendants will have been sentenced and is likely to be transported to a Bureau of Prisons.[9]

Furthermore, though it is true that as this Court noted the "Government may conserve its resources by proceeding with Defendant's trial in this Court", convenience of the prosecution is not a factor that should be considered or given great weight in analyzing motions to transfer an action under Rule 21(b).   *See United States v. Dickie*, 775 F.2d 607, 610 (5th Cir. 1985).   Courts have likewise stated that, since government lawyers and agents have nationwide responsibility

---

[8] As this Court noted, Torry Zenon "offer[ed] no arguments in support of his Motion with reference to the factors that the United States Supreme Court developed in *Platt v. Minnesota Mining Co.*" Doc. 149 at 7 (citation omitted).   Accordingly, this Court has not been asked to address these factors by any party and this Court noted its decision denying transfer was in part based on the "absence of any other arguments in support of transfer".

[9] Mr. Percy Robinson was sentenced on November 13 and Ms. Susan Smallwood was sentenced on November 19, 2012.   Ms. Topeka Sam, Mr. Hiram Alvarez, and Mr. Reginald Marshall are to be scheduled on January 11, 15, and 18, 2013, respectively.   Mr. Williams recognizes that a motion to postpone sentencing was filed on December 14, 2012 by the United States in the matter involving Mr. Alvarez.   *See* Doc. 203.   This Court, however, has not yet ruled on the motion.

[9]

and are equipped to operate in every district in the country, inconvenience to the Government has *minimum* relevance in the inquiry mandated by Rule 21(b).  *See United States v. Benjamin*, 623 F. Supp. 1204, 1213 (D.D.C. 1985); *United States v. Gruberg*, 493 F. Supp. 234 (S.D.N.Y. 1979); *United States v. Erie Basin Metal Products Co.*, 79 F. Supp. 880, 885-86 (D. Md. 1948) (where other factors favor transfer under Rule 21, it is of little significance that the transfer will force the Government to try the case twice).  Judge Oberdorfer's decision in *United States v. Benjamin* provides a cogent statement of the reasons why convenience to the Government is not a major factor in analyzing transfer motions under Rule 21(b):

> The United States is ubiquitous. The [federal investigating agencies] and the Department of Justice are, or should be, 'at home,' not only in Washington, D.C., but also in Fresno or any other place in California or elsewhere in which a federal court sits. . . . In any federal district, the government lawyers have a built-in office, complete with local logistical support from parallel local staffs of the U.S. Attorney, IRS, and the FBI. Each of these organizations has established telephone and telecopying access to its national office in Washington, D.C., with back-up and supervisory personnel easily available. The Justice Department is, or should be, staffed, so that if one prosecuting team is away from Washington, supervisors and other lawyers can carry on for them in any other matters for which they are responsible.

623 F. Supp. at 1212.  *See also United States v. Russell*, 582 F. Supp. 660, 664 (S.D.N.Y. 1984) (recognizing that "it is no great problem" for the government to move its investigative team from one district to another for trial); *Gruberg*, 493 F. Supp. at 243 ("The Government's convenience is, however, a factor given little weight when other considerations of convenience suggest transfer of a trial under Rule 21(b)").  Also, where it was the government's decision to bring the indictment in a place that is not the "center of gravity", this factor should not be held against the defendant.  *See Bein*, 539 F.Supp. at 76 (finding government's efficiency arguments

[10]

unpersuasive, where granting motion to transfer would require splitting trial, but where this inefficiency was the result of the government's decision to bring the indictment in a place that was not "the natural center of gravity").

The court in *Ferguson* addressed this very issue.  In *Ferguson*, two of the defendants had already pled guilty and the government argued that if the court were to transfer the matter to Connecticut, the efforts by the United States Probation Office for the Eastern District of Virginia would be duplicated in Connecticut thereby wasting limited judicial resources and possibly resulting in disparate sentences.   The court, however, rejected this argument because the government did not argue that the Connecticut courts do not have the time or resources to investigate or learn this case.  Additionally, with respect to the possibility of disparate sentences, the court noted that the government has the ability to ask the court in Connecticut to take judicial notice of the alleged coconspirator's sentences in this district.   Despite the fact that two co-defendants had pled guilty, the court transferred the case because "allowing the case to proceed in United States District Court of Connecticut is consistent with the interests of justice and judicial economy."  432 F.Supp.2d at 570.  The same is applicable here.

Finally, our strong legal tradition favoring trial in the vicinity of where the crime occurred is ultimately founded not just on a concern for the rights and needs of defendants, but on the recognition that juries with some knowledge of local conditions can usually produce a more fair, just, and generally accepted verdict than those who are completely unfamiliar with the setting and circumstances in which a crime is alleged to have taken place.  This fact, although not necessary, is enhanced by the potential need for viewing of the residence that we have noted may become relevant at trial.

[11]

Based on the fact that Maryland is the "nerve center" of the Indictment, this factor strongly favors transfer to the District of Maryland, and indeed this factor alone warrants transfer to Maryland.

**THE LOCATION OF POSSIBLE WITNESSES**:  The government has indicated that in addition to the law enforcement agents, chemists and technicians who are all part of the government (so their convenience is not heavily weighed) and are also mainly located in Maryland, the government would call Hiram Alverez and the Confidential Sources as its only other witnesses.  In addition to Alverez and the Confidential Sources being cooperators, and therefore, part of the government team, there is no inconvenience to those witnesses.  Mr. Alverez is originally from California.  He is currently incarcerated and is scheduled to be sentenced on January 15, 2013.  Confidential Source 1, the main cooperator, is believed to be from California as well and is a paid cooperator who is expected to travel as needed to assist the government and is paid for his travels and time.  The Indictment makes clear that other than an alleged co-defendant and the two government cooperators, the remaining defendants ready to stand trial did **not** enter Virginia or did anything remotely related to Virginia.  Moreover, if character witnesses were to be called, the vast majority of Mr. Williams' character witnesses reside in Maryland, thereby weighing in favor of transfer.  *See Ferguson*, 432 F.Supp.2d at 564 (finding that the fact that the vast majority of defendants' character witnesses reside in Connecticut weighs in favor of transfer); *United States v. Martino*, No. S1 00 CR 389, 2000 WL 1843233, at *5 (S.D.N.Y. Dec.14, 2000) (unpublished); *see also United States v. Ohran*, No. 99 CR 142, 2000 WL 620217, at *3 (unpublished) (granting transfer because the impact of character

witnesses would be greater in the jurisdiction where they reside).  Therefore, this factor strongly favors Mr. Williams' motion to transfer his case to Maryland.

**THE LOCATION OF COUNSEL AND EXPENSES**:  There is no question that the expense to Mr. Williams will result in a "substantial balance of inconvenience" if this case remains in the Eastern District of Virginia.  Mr. Williams' lead counsel, who is handling most of the trial preparation matters and who will try the case, is located in Baltimore, Maryland.  Mr. Williams is currently housed in the Northern Neck Regional Jail, which is a 3-hour plus drive one-way for counsel.  That distance has made it extremely difficult for counsel to meet and discuss this case with Mr. Williams and is hampering our trial preparation.  The *Djeredjian* court recognized that the location of counsel is also a factor favoring transfer.  Similar to the instant case, Mr. Djeredjian had hired counsel, who practiced in the Central District of California, and was thus required to retain local counsel, thereby creating additional expense.

The fact that other defendants' counsel may not practice in Maryland should not deter this Court from weighing this factor in favor of transfer.  The *Djeredjian* court recognized that the co-defendant had been appointed counsel pursuant to the Criminal Justice Act, and if the case were transferred, the co-defendant could request that the transferee court appoint new CJA counsel from the transferee district.  *See* Exhibit A at 12; *see also United States v. Lopez*, 343 F.Supp.2d 824, 826 (E.D. Mo. 2004) (recommending appointed counsel file a motion in the transferee court to have local CJA attorney appointed to prevent the CJA attorney in transferor district from having to travel and continue representation).  Here, both Mr. Zenon and Mr. Vincent Williams[10], the remaining co-defendants, have been appointed CJA counsel.  Further,

---

[10] Vincent Williams is Dion Williams' son and the family is in the process of retaining private

Mr. Zenon has previously sought a change of venue to the District of Maryland, and Vincent Williams also joins in this motion.  Accordingly, if this case were transferred to the District of Maryland, both co-defendants could be appointed new counsel pursuant to the CJA.

Additionally, the government has instructed counsel not to turn over the discovery to the defendant.  As a result, counsel must travel and take the necessary discovery with him to review with Mr. Williams.  And when Mr. Williams wants to review the discovery and discuss it with counsel he must wait until counsel can make the trek to the jail.  On the other hand, if Mr. Williams case is transferred to Maryland, he will be held in Baltimore City in the federal designated holding facility, which is a five-minute drive from counsel's office.  Counsel and Mr. Williams, with trial fast approaching, are desirous of more frequent meetings that cannot be readily or easily accomplished without inconvenience to their preparation schedule.

Furthermore, if the case remains in Virginia Mr. Williams will incur expenses that would not be associated with a trial in Maryland.  For, example Mr. Williams, as in *Djeredjian*, is required to employ local counsel because his counsel of choice, as guaranteed by the Sixth Amendment, is not licensed in the Eastern District of Virginia.  This is an expense that he would not incur if the case were tried in Maryland.  The cost is exacerbated by the local rule requirement that local counsel must appear at all proceedings.  Mr. Williams is, therefore, required to pay for local counsel's time not out of necessity for evidence presentation but because the local rules require local counsel's presence.  While there may be good reason for the local rule and undersigned counsel and Mr. Williams do not take issue with the court's decision

---

counsel for Vincent Williams should the case be transferred to the District of Maryland.

[14]

to implement such a rule, it is an added expense that Mr. Williams would not incur if the case were to be tried in Maryland.

Also, because Richmond is over two hours away from Baltimore, undersigned counsel, his associate, and paralegal will have to stay at a hotel in Richmond and take three meals per day in Richmond all at an unnecessary expense to Mr. Williams; expenses which would not be incurred if the trial were held in Maryland.  The costs of paying transportation, lodging, and subsistence for the trial team will be substantial.  Courts have recognized that travel and lodging expenses are an obvious factor to be considered in determining the balance of inconvenience to the parties.  *See Ferguson*, 432 F.Supp.2d at 567; *United States v. Haley*, 504 F.Supp. 1124, 1128-29 (E.D.Pa.1981).  In light of these considerations, this factor weighs heavily in favor of transferring this case to Maryland.

**THE RELATIVE ACCESSIBILITY OF PLACE OF TRIAL**: There is also a "substantial balance of inconvenience" in adjudicating this matter in this district because the Maryland federal courthouse is more accessible to the defendants and the witnesses.  As noted Mr. Williams and the two remaining defendants have substantial ties to Maryland. Mr. Williams and his wife both grew up in Maryland and the core of their families still reside there.  Mr. Williams' family members would like to visit him and more importantly would like to attend his trial each day.  That is made extremely difficult with the case being over two hours away in Richmond.  If the trial were to be held in Baltimore, undersigned counsel's office is a five-minute drive or a ten-minute walk to the federal courthouse versus a two-hour plus drive to Richmond.  Mr. Williams' family in Baltimore would all be within thirty minutes or less drive of the federal courthouse.  Vincent Williams, a codefendant, is Mr. Williams' young son who has

[15]

the same ties to Baltimore.  Mr. Zenon who has filed his own motion for change of venue was arrested in Baltimore and was living in Baltimore at the time of his arrest.  Accordingly, this factor also weighs strongly in favor of transfer.  *See Hurwitz*, 573 F.Supp. at 554 (holding that courts should be "[m]indful of the location of witnesses and counsel" in weighing the relative accessibility of the place of trial).

    For all the reasons stated this Court should transfer the matter to Maryland.

**II.**    **W**ITH **R**ESPECT TO **C**OUNT **T**WO, **V**ENUE IS **N**OT **P**ROPER IN THE **U**NITED **S**TATES **D**ISTRICT **C**OURT FOR THE **E**ASTERN **D**ISTRICT OF **V**IRGINIA.

    When a defendant is charged with multiple counts, ***venue must be proper on each count***. *See United States v. Smith,* 198 F.3d 377, 382 (2d Cir. 1999); *United States v. Villarini,* 238 F.3d 530, 533 (4th Cir. 2001). To obtain a conviction for attempt, the government must show that the defendant "possessed the requisite criminal intent, as well as the commission of an act which constitutes a substantial step towards commission of the substantive offense." *United States v. Ramirez,* 348 F.3d 1175, 1180 (10th Cir. 2003) (quotations omitted).

    Imputation of another individual's acts for the purposes of establishing venue is not proper for an attempt charge.  In *United States v. Foy*, 641 F.3d 455 (10th Cir. 2011), the Circuit Court vacated the defendant's conviction for attempting to possess with intent to distribute between 500 grams and less than five kilograms of cocaine in violation of 21 U.S.C.A. §§ 841, 846 because the record uncovered absolutely no evidence that the defendant committed any act in the District of Kansas.  The trial court first noted that to obtain a conviction for attempt, the government must show that the defendant possessed the requisite criminal intent, as well as the commission of an act constituting a substantial step towards commission of the substantive offense, and that in concluding that venue was proper in the District of Kansas for the attempt

[16]

charge against the defendant, the district court described a series of phone calls that were played for the jury in which a codefendant coordinated a drug deal with the defendant and others from his home in Kansas; however, the court found, there was no evidence that the defendant was in Kansas at the time this drug deal was being coordinated. While it was entirely proper for the district court to impute the acts of the codefendant to the defendant for the purposes of establishing venue for the conspiracy charge, the appellate court stated, the government did not cite a single case suggesting that such imputation was proper to establish venue for the attempt charge; moreover, it observed, its independent research revealed that at least two other circuits had specifically rejected this type of "venue by imputation" approach when the crime charged does not require concerted activity. Thus, the court concluded, because the government failed to establish that the defendant committed any act that constituted a substantial step toward the commission of the substantive offense in the District of Kansas, it failed to properly establish venue for the attempt charge.

In the instant case, it is clear that the government attempts a "venue by imputation" approach to try Mr. Williams in a jurisdiction in which Mr. Williams did nothing and had no connections. According to the facts set forth by the government in its Indictment, Mr. Williams was present at a residence in Owings Mills, Maryland. The only individuals who remotely had any connection to Virginia are an alleged co-defendant and two individuals who were acting as government agents who flew to an airport in Richmond, Virginia. *See* Doc. 50 at 3-5. In fact, these alleged acts could arguably be considered preparatory acts, which alone are insufficient for a finding of venue. *See United States v. Strain*, 396 F.3d 689 (5th Cir. 2005) (holding that traveling through a district, although indispensable to the ultimate crime, is a mere preparatory

[17]

act and, therefore, insufficient for a finding of venue in that district).   Additionally, any subsequent overt acts by the alleged co-conspirators in Virginia, if any, took place after Mr. Williams' arrest in Owings Mills, Maryland.   *See United States v. Postal,* 589 F.2d 862 (5th Cir. 1979) (noting that it is well settled that a person's participation in a conspiracy ends when that person is arrested for his role in the conspiracy).   The government simply cannot establish by a preponderance of the evidence that Mr. Williams committed in the Commonwealth of Virginia the crime of attempt to possess with intent to distribute or that the one alleged co-defendant, who was not a government agent, committed an act, which constitutes a substantial step towards the commission of Count 2.

This Court previously addressed whether venue as to Count 2 is proper in the Eastern District of Virginia and concluded that venue is proper in Virginia because a defendant can be tried "not only where the defendant acts overtly, but also where any principals act to further the commission of an offense *that the defendant has aided and abetted*."   *See* Doc. 149 at 6.   While this statement of law is generally true, there is nothing in the discovery or evidence to suggest that Mr. Williams acted in any manner to *aid and abet*[11] the attempted possession with intent to distribute cocaine.   In fact, the evidence shows exactly the opposite. Mr. Williams was not present or involved when Mr. Alvarez advised the CS to fly into Richmond, Virginia to "avoid law enforcement drug interdiction efforts" and he played no role in their travel.   *See* Doc. 50 at 4. Mr. Williams did not fly into Richmond, Virginia.

In holding that there was venue for Count 2 based on aiding and abetting, this Court stated in support of the ruling that "after counting the money in the apartment the co-conspirators

---

[11] To establish aiding and abetting, defendant must have: (1) associated with criminal venture; (2) participated in venture; and (3) sought by action to make venture successful.  *See* 18 U.S.C. § 2.

[18]

returned to Richmond to facilitate the transaction.   Although the proposed transaction was ultimately unsuccessful due to the arrest of Messrs. Williams and Zenon, the cooperating sources and Santana continued to act in accordance with their agreement by traveling to Richmond in order to arrange the delivery of cocaine from Richmond to Maryland".   There are several errors in this statement that suggest the parties did not make the Court fully aware of the facts and therefore led to an erroneous ruling.   First, the co-conspirators did return to Richmond to facilitate the transaction and the proposed transaction was ultimately unsuccessful due to the arrest of Messrs. Williams and Zenon.   There was never to be an actual delivery of cocaine from Richmond to Maryland, and the DEA actually planned and arrested Messrs. Williams and Zenon shortly after Santana and the cooperators left the apartment.   Second, the cooperators and Santana did not travel to Richmond in order to arrange a delivery of cocaine because there was to be no delivery of cocaine.   More importantly, there is no evidence that Mr. Williams aided or abetted Santana and the cooperators planned travel or ultimate travel back to Richmond.   The evidence shows that Mr. Williams was already in custody when Santana and the cooperators agreed to travel back to Richmond.

Unless the government is able to forecast some evidence demonstrating that Mr. Williams in any way aided and abetted the attempted possession of marijuana by the principal (alleged co-defendant), venue as to Count 2 cannot be proper in the Eastern District of Virginia. Therefore, Count 2 must be dismissed for improper venue.

## CONCLUSION

The Supreme Court has acknowledged that the Framers who wrote the Constitution were "[a]ware of the unfairness and hardship to which trial in an environment alien to the accused

exposes him . . . ." *Johnson*, 323 U.S. at 275.  When considering all relevant factors, there is no question that this case would better serve the interest of justice if it were transferred to the District of Maryland.  For these reasons stated above, Mr. Williams respectfully requests entry of an order transferring this action to the District of Maryland, or, in the alternative, dismissing Count 2 for improper venue.

Respectfully submitted,

/s/ John G. LaFratta
John G. LaFratta
Main Street Law Offices
1701 West Main Street
Richmond, Virginia 23220
***Attorney for Defendant***

/s/ Kenneth W. Ravenell
Kenneth W. Ravenell
Milin Chun
Murphy, Falcon & Murphy
One South Street, 23rd Floor
Baltimore, Maryland 21202
***Attorneys for Defendant***

## **REQUEST FOR HEARING**

Counsel for Mr. Williams respectfully requests a hearing in this case so that the issue presented herein may be more fully developed.

[20]

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of December, 2012, a copy of the foregoing Motion, Pursuant to Fed. R. Crim. P. 21(b) to Transfer Action to the District of Maryland for the Convenience of the Parties and Witnesses, or, in the Alternative, Motion to Dismiss Count Two for Improper Venue was served on all parties and their counsel via ECF.


/s/ John LaFratta
John LaFratta

[21]