# EXHIBIT

# A

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 2 of 16 PageID# 935
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 20 of 34   Page ID #:63
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CR-41-1-FL
No. 5:06-CR-41-2-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AVEDIS DJEREDJIAN | ) | |
| CARMEN BADRIAN | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendant Avedis Djeredjian's renewed motion to change venue pursuant to Fed. R. Crim. P. 21(b) (DE # 70), filed February 26, 2007, and joined in by defendant Carmen Badrian. Defendants Djeredjian and Badrian (hereinafter "defendants") – husband and wife – request the court exercise its discretion to transfer this case to the Central District of California, their home district, over 2,000 miles from Raleigh, North Carolina, where trial is set to begin May 14, 2007. The government has responded, and in this posture the motion is ripe for ruling. For the reasons discussed herein, defendants' motion is granted.

BACKGROUND

This case arises from an alleged conspiracy by defendants and others to engage in the trafficking of cigarettes from North Carolina for sale in California, thereby avoiding tax obligations under California law, and the laundering of the resulting proceeds. Defendants reside in or around Los Angeles, California, within the Central District of California.

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 3 of 16 PageID# 936
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 21 of 34 Page ID #:64
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 2 of 15

On February 15, 2006, a grand jury in the Eastern District of North Carolina indicted defendant Djeredjian on one count of conspiracy to traffic in contraband cigarettes, in violation of 18 U.S.C. § 2342(a), one count of conspiracy to launder the proceeds of contraband cigarette trafficking, in violation of 18 U.S.C. § 1956(h), and eleven (11) counts of substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I). Defendant Djeredjian moved on April 7, 2006, to transfer the case to the Central District of California, pursuant to Fed. R. Crim. P. 21(a) and 21(b). The court conducted a hearing on June 23, 2006, at which time the motion was denied. However, the court commented to counsel at hearing that the issue under Rule 21(b) was close.

On October 25, 2006, the grand jury returned a superseding indictment against defendants Djeredjian and Badrian, and a co-conspirator, Roobik Ohaniansaki. All three defendants were charged with one count of conspiring to traffic in contraband cigarettes, in violation of 18 U.S.C. § 2342(a); two counts of conspiracy to launder the proceeds of contraband cigarette trafficking, in violation of 18 U.S.C. § 1956(h); and one count of structuring transactions and aiding and abetting, in violation of 31 U.S.C. §§ 5324(a)(3) and (d), 18 U.S.C. § 2, and 31 C.F.R. § 103.11. Defendant Djeredjian was additionally charged with the eleven (11) counts of substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I).

Defendant Djeredjian renewed his motion to transfer this case, now pursuant only to Fed. R. Crim. P. 21(b), on February 26, 2007. Because the deadline for defendants Badrian and Ohaniansaki to file pre-trial motions had not at that time expired, the court ordered those defendants to file briefs outlining their position on the motion, on an expedited basis. Defendant Ohaniansaki did not join the motion. Defendant Badrian's brief expressly states that she joins in the motion, and although she did not file a separate motion to transfer, the court deems her response to its order as a sufficient

2

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 4 of 16 PageID# 937
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 22 of 34 Page ID #:65
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 3 of 15

request for relief under Fed. R. Crim. P. 21(b). Pursuant to that rule, defendants argue that the convenience of the parties and witnesses and the interest of justice warrant transfer.

The government alleges defendants engaged in the trafficking of 495,000 cartons of cigarettes from 2002 until 2005. Allegedly, defendant Djeredjian and an associate, Masis Geragosian (hereinafter "Geragosian"), personally purchased the cigarettes in North Carolina, paying the low cigarette tax in this state, at the time, of fifty (50) cents per carton. The conspirators caused the cigarettes to be shipped to several businesses owned or operated by the conspirators in the Los Angeles area. Once in California, the cigarettes were stored in various facilities controlled by the conspirators and their entities, and ultimately distributed or sold. In the course of these transactions, the conspirators allegedly failed to meet their obligations under California law and regulations, as enforced by the California Board of Equalization, the governmental agency in that state with regulatory authority over cigarette importation and sale, resulting in the loss to California of more than $4.25 million in cigarette taxes. Defendants profited by avoiding payment of the cigarette tax of $8.70 per carton levied by California, as evidenced by their failure to purchase tax stamps and possession of counterfeit tax stamps.[1] In the course of the investigation, the government conducted surveillance and executed search warrants at numerous locations in this district and in the Central District of California.

---

[1] This conduct is prohibited by 18 U.S.C. § 2342(a), which provides, "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." The term "contraband cigarettes" is defined in 18 U.S.C. § 2341(2), as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." Defendant Djeredjian has repeatedly asserted that he was at all times in compliance with all relevant requirements, thus rendering his conduct legal. See 18 U.S.C. § 2341(2)(C) (exempting "a person – (I) who is licensed or otherwise authorized by the State where the cigarettes are found to account for and pay cigarette taxes imposed by such State; and (ii) who has complied with the accounting and payment requirements relating to such license or authorization with respect to the cigarettes involved").

3

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 5 of 16 PageID# 938
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 23 of 34 Page ID #:66
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 4 of 15

## ANALYSIS

Rule 21(b) provides, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." The motion "may be made at or before arraignment or at any other time the court or these rules prescribe." FED. R. CRIM. P. 21(d). Defendant Djeredjian filed the original motion prior to his arraignment, and filed the renewed motion on his deadline for filing pre-trial motions. Defendant Badrian has not yet been arraigned.

The question raised on a Rule 21(b) motion "is within the court's discretion." United States v. Espinoza, 641 F.2d 153, 162 (4th Cir. 1981). "The moving party has the burden of setting forth facts sufficient to warrant transfer." United States v. Martino, 2000 WL 1843233, *5 (S.D.N.Y. 2000) (granting motion). While one factor used to evaluate a Rule 21(b) motion is the location where the criminal conduct occurred, Rule 21(b) does not require that venue be proper in the transferee district. See FED. R. CRIM. P. 21(b), advisory committee notes to 1966 amendments (indicating the court can transfer a case to "a district in which no part of the offense was committed"); 2 Wright & Miller, Federal Practice and Procedure § 343, at 399-401 (3d ed. 2000).

According to the Seventh Circuit, "[n]othing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing 'truly compelling circumstances' for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district." Matter of Balsimo, 68 F.3d 185, 187 (7th Cir. 1995) (holding that denial of Rule 21(b) motion can be challenged by petition for writ of mandamus). Several district courts in the Fourth Circuit offer a different formulation of the test, which holds that to succeed under Rule 21(b), "the defendant must demonstrate that prosecution of the case in the

4

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 6 of 16 PageID# 939
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 24 of 34 Page ID #:67
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 5 of 15

district where the count was properly filed would 'result in a substantial balance of inconvenience' to the defendant." United States v. Ferguson, 432 F. Supp. 2d 559, 562 (E.D. Va. 2006) (quoting United States v. Hurwitz, 573 F. Supp. 547, 552 (S.D. W. Va. 1983)). Upon review of the caselaw, there is no indication that this statement of the defendant's burden is, as a practical matter, significantly different from the Seventh Circuit's.

In considering inconvenience to the defendants, the court may apply a ten-factor test, quoted with apparent approval by the Supreme Court in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964) (affirming in part the Seventh Circuit's grant of mandamus, where the district court denied the corporate defendant's motion to transfer). The government does not dispute the general applicability of the Platt test. The factors are: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket condition of each district involved; and (10) any other special elements which might affect the transfer. See Platt, 376 U.S. at 244-45; see also United States v. Heaps, 39 F.3d 479, 483 (4th Cir. 1994) (holding district court did not abuse discretion in applying Platt test and denying motion); Ferguson, 432 F. Supp. 2d at 562 (applying Platt test and granting motion); United States v. Donato, 866 F. Supp. 288, 293 (W.D. Va. 1994) (same); United States v. Oster, 580 F. Supp. 599, 601-02 (S.D. W. Va. 1984) (applying Platt test and denying motion); Hurwitz, 573 F. Supp. at 551-52 (applying Platt test and granting motion).

The Fourth Circuit has not stated which factors it considers most important. The Second Circuit has held in one case that expense to the parties and the location of parties, witnesses, counsel,

5

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 7 of 16 PageID# 940
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 25 of 34 Page ID #:68
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 6 of 15

events, and necessary documents are the most important factors. See United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990) (holding district court did not abuse discretion in denying motion). The Second Circuit also noted that "[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance." Id. The court will examine the Platt factors *seriatim* to determine whether the facts of this case, as a whole, establish a "substantial balance of inconvenience" if prosecution continues in this district.

1. **Location of defendants**

There is no constitutional right to be tried in one's home district. See Platt, 376 U.S. at 245 (noting Article III, § 2 of the Constitution provides that trial should be held in the vicinity of the crime). This factor nonetheless militates in favor of transfer to the home district, although it could not, on its own, justify transfer. See Ferguson, 432 F. Supp. 2d at 562[2]; Donato, 866 F. Supp. at 293; Oster, 580 F. Supp. at 602; Hurwitz, 573 F. Supp. at 552; see also United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) ("As a matter of policy . . . wherever possible, defendants should be tried where they reside."); United States v. Atwood, 538 F. Supp. 1206, 1208 (E.D. Pa. 1982) ("[D]efendant's home district is entitled to real weight.") (citations omitted). Both defendants, and their two children, reside in the Central District of California, favoring transfer to that district. See also United States v. Lima, 1995 WL 348105, *3 (N.D. Ill. 1995) (unpublished) (considering disruption to the defendant's family life, under this prong).

---

[2] For the proposition that "the Fourth Circuit has held that a defendant should be tried in a court close to where the defendant lives," the district court in Ferguson cited United States v. Lenihan, 19 F.3d 1430, *4 (4th Cir. 1994) (unpublished table opinion). In Lenihan, the Fourth Circuit evaluated the propriety of a late venue objection, where the defendant was prosecuted in her home district of Maryland. The court of appeals affirmed the denial of the untimely motion, and in doing so noted that "we cannot discern any hardship whatever to Lenihan from the government's decision to prosecute her in Maryland. Maryland, her place of residence, presumably offered conveniences and advantages to her which a trial in another district might lack." Lenihan, 19 F.3d 1430 at *4 (internal citation omitted).

6

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 8 of 16 PageID# 941
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 26 of 34 Page ID #:69
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 7 of 15

### 2. Location of possible witnesses

Defendant Djeredjian's original motion identified by name or position approximately thirty (30) witnesses residing in California, whose location was not subsequently challenged by the government. The motion also suggested that various bank officers from California would be called to testify as to business and personal banking records. On the renewed motion, defendants argue the charges in the superseding indictment, especially as against defendant Badrian, will necessitate the testimony of additional California witnesses. The government responds that "several key potential witnesses from North Carolina [are] associated with the case," and proceeds to generally identify multiple FBI, ATF, and IRS agents, officials with the State of North Carolina, local sheriff's departments, and others, as well as several witnesses from Virginia. (Gov't resp., DE # 89, at 4.) The government does not identify these individuals with the specificity offered by defendants, however, instead listing, for example, "five or six Special Agents of the Bureau of Alcohol, Tobacco and Firearms based out of Raleigh, North Carolina." (Id.)

In response to the original motion, the government argued the location of its witnesses was "of no legitimate concern" to defendant Djeredjian. (Gov't resp., DE # 20, at 10.) Thus, the government would have the court consider only the location of defendants' witnesses. On the contrary, the location of *all* witnesses is relevant to the instant motion, regardless of the purpose for which they are called. The text of Rule 21(b) contains no language limiting "convenience of the . . . witnesses" to convenience of the movant's witnesses. FED. R. CRIM. P. 21(b). In Hurwitz, the court noted the government and the defendant together identified thirty-eight (38) witnesses, and because the "overwhelming majority" of these witnesses resided in or near the transferee district, this factor favored transfer. Hurwitz, 573 F. Supp. at 552. The court did not consider which party would

7

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 9 of 16 PageID# 942
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 27 of 34 Page ID #:70
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 8 of 15

call the potential witnesses. See also Ferguson, 432 F. Supp. 2d at 564 (applying similar analysis).

"Location of witnesses is 'one of the more significant factors in the' decision to transfer venue under Rule 21(b)." Id. (quoting United States v. Daewoo Indus. Co., Ltd., 591 F. Supp. 157, 160 (D. Or. 1984)). The California witnesses are particularly important in this case, because the criminality of cigarette smuggling hinges on the nonpayment of California cigarette taxes, and from the defendants' pretrial motions, it appears a significant issue will be defendant Djeredjian's status under California law as a retailer or distributor, and his use of California real property for storage, distribution, and sale of the cigarettes. Additionally, "[t]he Court cannot underestimate the importance of [character] witnesses to the Defendants and of the greater likelihood that the Defendants will in fact be able to produce such witnesses to testify if the trial of this action is held in" their home district. Hurwitz, 573 F. Supp. at 552 n.15 (further quoting Justice Murphy's observations on the importance of such witnesses in United States v. Johnson, 323 U.S. 273, 279 (1944) (Murphy, J., concurring)). Because a majority of witnesses that might be called, as established by the parties' briefs, reside in California, this factor favors transfer.[3]

### 3. Location of events likely to be in issue

The government argues this case "is mostly about an ongoing criminal conspiracy in which *all* of the promotion of a specified unlawful activity took place in the Eastern District of North Carolina." (Gov't resp., DE # 89, at 5) (emphasis added.) This argument overlooks significant conduct that allegedly occurred in California, as appears on the face of the superseding indictment.

---

[3]The court notes in a motion to continue the suppression hearing before the magistrate judge set for tomorrow, counsel for the government recently urged continuance on the grounds that she had purchased a plane ticket to travel to California April 9, 2007, with a return date of April 14, 2007, for the purpose of conducting witness interviews and trial preparation. The magistrate judge denied the continuance request.

8

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 10 of 16 PageID# 943
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 28 of 34   Page ID #:71
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 9 of 15

While the four overt acts alleged for the trafficking conspiracy count took place in this district, focus on those acts could be described as myopic, in light of the entirety of the conspiracy. The alleged overt acts are: (1) defendant Djeredjian purchasing cigarettes in this district, from January 2002 until March 2003; (2) Geragosian purchasing cigarettes in this district, from March 2003 until June 2005; (3) the conspirators' purchasing cigarettes in this district with funds derived from the trafficking; and (4) Geragosian being found in this district, in possession of $133,860 in currency intended to be used for purchasing cigarettes. (Superseding indictment, ¶¶ 39-42.) In contrast, approximately three-fourths of the "ways, means, and manner" allegations for the same count involve conduct in or directed towards California, and, ultimately, it was the California conduct that made the entire enterprise illegal, and the sale of cigarettes in California that generated the funds that fueled the operation. (See id., ¶¶ 15, 16, 18, 20-22, 24, 27, 29-39.) "Contraband cigarettes" are those "which bear no evidence of the payment of applicable State or local cigarette taxes *in the State or locality where such cigarettes are found.*" 18 U.S.C. § 2341(2) (emphasis added). Thus, it is the non-payment of taxes required by the state of California, to the state of California, for cigarettes sold or found in the Central District of California, on which the primary misconduct hinges.

The government also argues venue would be improper in California on the eleven (11) counts of substantive money laundering, faced only by defendant Djeredjian, and that this militates against transfer. However, venue does not control under Rule 21(b), and to the extent it deserves weight, the superseding indictment alleges defendant Djeredjian knew the laundered funds represented the proceeds of unlawful cigarette smuggling (see, e.g., Superseding indictment at 10), and that cigarette traffickers often used the profits of trafficking to purchase more cigarettes (Id., ¶¶ 12, 41). Thus, the government alleges defendant Djeredjian knew the laundered funds were generated by the sale of

9

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 11 of 16 PageID# 944
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 29 of 34 Page ID #:72
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 10 of 15

contraband cigarettes in California.[4] The government also admits that venue on at least some counts would be proper in California, including the conspiracy counts against defendant Badrian. The location of events likely to be at issue favors transfer.

### 4. Location of documents and records

This factor is of little significance today, due to the rapidity with which documents can be transported to other districts. The government argues that virtually all the records in this case are stored in Raleigh, North Carolina. However, a significant portion of these records were likely generated in California, since a critical issue is taxation and licensing by California authorities. See United States v. Spy Factory, Inc., 951 F. Supp. 450, 458 (S.D.N.Y. 1997) (noting that where government had role in moving documents to transferor district, this factor could not weigh against transfer); United States v. Bein, 539 F. Supp. 72, 74 (N.D. Ill. 1982) ("It would be grossly unfair to permit the government to 'create' venue, or to alter the balance of relevant considerations, simply by shipping documents," and "[d]ocuments moved here can just as easily be moved back.").

### 5. Disruption of defendants' businesses if the case is not transferred

Defendant Djeredjian informs the court that he operates several businesses in California, and they would suffer from his absence. The government responds that he had no problem leaving his businesses to come to this district to conduct the illegal activity. Defendant Badrian is a real estate agent in California, but according to the government she is not successful in her work, and has just

---

[4] In United States v. Cabrales, 524 U.S. 1 (1998), the Supreme Court "clearly establish[ed] that the mere fact that proceeds were criminally generated in a particular district is not sufficient, standing alone, to establish proper venue in that district for a charge of laundering the money." United States v. Villarini, 238 F.3d 530, 535 (4th Cir. 2001); see also United States v. Stewart, 256 F.3d 231, 243 (4th Cir. 2001). Venue may, however, be proper in the district where the funds were generated if the government alleges a defendant was responsible for the transfer of funds into the district where laundering occurred. See United States v. Lanza, 2006 WL 344955 (W.D. Va. 2006) (unpublished). Because Rule 21(b) permits transfer to a district where venue would not otherwise be proper, the court need not examine this issue any further.

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 12 of 16 PageID# 945
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 30 of 34   Page ID #:73
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 11 of 15

one house listed. The Platt factors were announced in the context of a Rule 21(b) motion by a corporate defendant, and therefore this specific factor may not apply to individual defendants, although it is often read to apply in similar circumstances. See, e.g., Oster, 580 F. Supp. at 602 (discounting the defendant-employee's unavailability to employer during trial); Hurwitz, 573 F. Supp. at 553-54 (same). Therefore, to extent this consideration is appropriate, *some* disruption to defendants' business would occur if trial is held in this district, but this only marginally favors transfer.

### 6. Expense to the parties

This factor supports defendants, as it would be very expensive to conduct a two-week trial over 2,000 miles from their home. Defendant Djeredjian retains private counsel, while defendant Badrian currently has counsel appointed pursuant to the Criminal Justice Act. Thus, at least one defendant faces significant costs in arranging transportation of witnesses. The court is acutely aware of defendants' financial circumstances, from consideration of several motions in the accompanying civil forfeiture case, where defendants seek access to seized property to fund their criminal defense. See Case No. 5:05-CV-767. On the contrary, the government has effectively unlimited resources to devote to prosecution. Courts find this factor even favors defendants who are wealthy and otherwise have the means to fund an expensive out-of-state defense. See Ferguson, 432 F. Supp. 2d at 567-68 (where the defendants were former high-level executives of large insurance companies, and the trial was anticipated to last sixteen days). This factor counsels strongly in favor of transfer.

### 7. Location of counsel

Defendant Djeredjian's primary counsel practices in the Central District of California, although he also retains local counsel as required, creating additional expense. Defendant Badrian's

11

Case 3:12-cr-00047-HEH Document 204-1 Filed 12/17/12 Page 13 of 16 PageID# 946
Case 2:07-cr-00475-GHK Document 10-2 Filed 05/23/07 Page 31 of 34 Page ID #:74
Case 5:06-cr-00041-FL Document 102 Filed 04/09/2007 Page 12 of 15

counsel practices in the Eastern District of North Carolina, and was appointed pursuant to the Criminal Justice Act. If the case is transferred, she could request the transferee court appoint new CJA counsel from the transferee district. See United States v. Lopez, 343 F. Supp. 2d 824, 826 (E.D. Mo. 2004) (recommending appointed counsel file a motion in the transferee court to have a local CJA attorney appointed, to prevent the CJA attorney in transferor district from having to travel and continue representation). The government's attorney is located in this district, but would have easy access to support services in the Central District of California. Additionally, defendant Djeredjian's California counsel has represented this defendant throughout the course of this case, filing notice of appearance on March 31, 2006, while defendant Badrian's counsel first appeared on January 29, 2007, and the Assistant United States Attorney currently prosecuting this case first appeared on January 8, 2007. This factor thus favors transfer.

### 8. Relative accessibility of the place of trial

Both Los Angeles and Raleigh are easily accessible and serviced by major airports, so this factor is neutral, except as already considered in the context of the location of witnesses and counsel.

### 9. Docket conditions of the districts

After enactment of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, courts tend to discount this factor. The case is set for trial, and a transfer would certainly require additional delay. Nonetheless, because the speedy trial concern is for the protection of defendants, and defendants here are requesting the transfer (and inherent delay), this factor is neutral.

### 10. Other special elements

Several other factors militate in favor of transfer to the Central District of California. Most importantly, the state of California suffered the monetary loss caused by the conspiracy, because

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 14 of 16 PageID# 947
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 32 of 34   Page ID #:75
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 13 of 15

defendants profited from their failure to pay that state's cigarette tax. Not only does this fact retain independent significance, it serves as a proxy for the location of the critical events at issue in this case. Furthermore, the forfeiture notice in the superseding indictment lists, among other property, three pieces of real estate in Glendale, California, including one location where contraband cigarettes were seized.

The facts that Geragosian pleaded guilty in this district, and that defendant Ohaniansaki's case is not at this time transferred, do not weigh against the motion. In Ferguson, two co-conspirators pleaded guilty in the transferor district, and the court noted that the Probation Office had already invested substantial time into preparing pre-sentence reports, but nonetheless transferred the moving defendants' cases. See Ferguson, 432 F. Supp. 2d at 570. Here, the government does not argue that the relevant officials in the transferee district would be unable to undertake similar preparation, or that a disparate sentence or other inefficiency or issue would result. See also FED. R. CRIM. P. 20 (permitting transfer of case for purposes of receiving plea and sentencing).

Lastly, defendant Badrian's arguments for transfer are especially strong, as she does not face the substantive money laundering counts which the government argues tie defendant Djeredjian to this district. Additionally, there is no suggestion in the superseding indictment that she ever traveled to the Eastern District of North Carolina as part of the conspiracy. As the government notes, venue for the conspiracy charges against Badrian is nonetheless proper in North Carolina, because some conspiratorial conduct took place here. However, where one moving defendant has a strong argument for transfer, and another moving defendant has at least a colorable argument for transfer, in the interests of convenience and justice both defendants' cases should be transferred, to try to preserve all possible efficiencies. C.f. United States v. Morrison, 946 F.2d 484, 489 (7th Cir. 1991)

13

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 15 of 16 PageID# 948
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 33 of 34   Page ID #:76
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 14 of 15

(affirming the district court's denial of Rule 21(b) motion, where the movant sought to transfer venue from Milwaukee to Puerto Rico, in part because the cases of five co-defendants would not be transferred, "resulting in great inconvenience to the witnesses involved as well as considerable expense to the government"); Bein, 539 F. Supp. at 76 (finding government's efficiency arguments unpersuasive, where granting motion to transfer would require splitting trial, but where this inefficiency was the result of the government's decision to bring the indictment in a place that was not "the natural center of gravity"). In this instance, the defendant with the strongest argument for transfer is the wife of the other moving defendant, and together they maintain a family with young children. Convenience, justice, and efficiency thus favor transfer of both defendants' cases.

Where defendant Djeredjian's original motion to transfer made a close, but not compelling, argument, intervening circumstances, including the new charges and presence of a second moving defendant, now lead the court to exercise its discretion to transfer this case. Considering the Platt factors as applied to both defendants, continued prosecution of this case in the Eastern District of North Carolina would result in a substantial balance of inconvenience to the parties. Defendants reside in the Central District of California, and events critical to the government's case, and most likely to be at issue, occurred there. The state of California suffered the loss at issue, and defendant Djeredjian's alleged money laundering in the Eastern District of North Carolina served to permit further trafficking and avoidance of California taxes. As best the court can determine from the parties' briefing, the majority of witnesses reside in or near the Central District of California. Defendant Djeredjian faces great expense in funding his defense in this district. Last, because efficiency argues for trying both defendants in the same district, in one proceeding, defendant Badrian's stronger arguments militate in favor of her husband.

14

Case 3:12-cr-00047-HEH   Document 204-1   Filed 12/17/12   Page 16 of 16 PageID# 949
Case 2:07-cr-00475-GHK   Document 10-2   Filed 05/23/07   Page 34 of 34   Page ID #:77
Case 5:06-cr-00041-FL   Document 102   Filed 04/09/2007   Page 15 of 15

## CONCLUSION

After careful consideration, for the reasons set forth above, defendant Djeredjian's renewed motion to transfer (DE # 70), joined in by defendant Badrian, is GRANTED as to both defendants. This case, including all unresolved matters before the court relating to defendants Djeredjian and Badrian, is TRANSFERRED immediately to the Central District of California. In furtherance of the determination herein made, all motions referred to the magistrate judge for ruling or recommendation of or relating to defendants Djeredjian and Badrian are recalled, and the suppression hearing set for April 10, 2007 is discontinued on this court's docket. The Clerk of Court is directed to transfer this case to the Central District of California as it relates to these two defendants.

The ends of justice served by the court's granting of the motion outweigh the interests of the public and these defendants in a speedy trial. The period of delay resulting from the granting of this motion is therefore to be excluded from the calculation of speedy trial time pursuant to 18 U.S.C. § 3161(h)(8)(A).

SO ORDERED, this 9th day of April, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge



15