
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                                    Criminal Case No. 3:12cr47

DION LEVERING WILLIAMS,

      Petitioner.

## REPORT AND RECOMMENDATION

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") by Dion Levering Williams, a federal prisoner. The Court held an evidentiary hearing, after which the parties submitted proposed findings of fact and conclusions of law. (ECF Nos. 465, 466.) The matter is ripe for disposition. For the following reasons, the Court RECOMMENDS that Williams's claim of ineffective assistance of counsel based on his attorney's failure to file an appeal as directed be DISMISSED and that the § 2255 motion be DENIED.

### I. Factual and Procedural Background

On April 3, 2012, a federal grand jury indicted Williams and eight others in a three-count indictment, charging Williams in Count One with conspiracy to possess with intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846, and in Count Two with attempting to possess with intent to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. (ECF No. 3.) The case was assigned initially to the Honorable United States District Judge James R. Spencer but was reassigned in December 2012 to the Honorable United States District Judge Henry E. Hudson. On September 4, 2012, after Williams's arraignment was scheduled to take place on September

27, 2016, John LaFratta was appointed as counsel for Williams. (ECF No. 102.) Williams was arraigned on September 27, 2012, and he pled not guilty. (ECF No. 112.) His and his co-defendants' motions for a continuance beyond the speedy trial deadline were granted (ECF Nos. 112–115), and an agreed discovery order and a protective order were entered. (ECF Nos. 116, 117.)

On November 7, 2012, a superseding indictment, adding an additional defendant, was returned against Williams and others. (ECF No. 156.) The charges against Williams were the same as in the original indictment. Williams was arraigned on the charges in the superseding indictment on November 16, 2012, and he pled not guilty. (ECF No. 171.) On December 4, 2012, Williams moved to change LaFratta's status from court appointed to retained as local counsel, and the motion was granted on December 6, 2012. (ECF Nos. 196, 197.) Williams also retained Kenneth Ravenell and Milin Chun to represent him. (ECF Nos. 198–201.)

On December 17, 2012, Ravenell filed on behalf of Williams a motion to change venue and a motion to suppress. (ECF Nos. 204, 205.) On January 4, 2013, the district court issued a memorandum opinion and order denying the motion to change venue. (ECF No. 226.) On January 7, 2013, Ravenell filed on behalf of Williams a motion for reconsideration of the change of venue. (ECF No. 232.) The district court denied the motion for reconsideration the same day. (ECF No. 233.) On January 10, 2013, the district court held a hearing on the motion to suppress and denied the motion at the conclusion of the hearing. (ECF No. 239.) An order reflecting the district court's ruling was issued on January 18, 2013. (ECF No. 264.)

The docket report for this criminal case reflects that, on January 14, 2013, a plea hearing for Williams was scheduled to take place on January 17, 2013. On January 17, when the parties appeared for the plea hearing, Ravenell first raised a preliminary matter with Judge Hudson, described facts regarding the Richmond connection to the case that had been clarified by a

witness and the United States, and again asked Judge Hudson to reconsider the denial of the motion to change venue. (Guilty Plea Hr'g Tr. 2:15–5:16, ECF No. 354.) Judge Hudson considered Ravenell's argument but stated that the renewed motion to change venue would be denied. Ravenell asked for a brief recess to confer with Williams, and Judge Hudson granted that request. (Guilty Plea Hr'g Tr. 5:17–6:4, ECF No. 354.)

After the recess, Williams appeared before Judge Hudson and pled guilty to Count One of the superseding indictment with a written plea agreement that was reviewed and signed by counsel and Williams. (Guilty Plea Hr'g Tr. 23:21-25:2, ECF No. 354; Plea Agreement, ECF No. 259.) Williams and counsel also reviewed and signed the written statement of facts. (Guilty Plea Hr'g Tr. 22:3–23, ECF No. 354; Statement of Facts, ECF No. 260.) The district court scheduled Williams's sentencing for April 19, 2013. (Guilty Plea Hr'g Tr. 25:3–22, ECF No. 354.) On April 19, 2013, Judge Hudson sentenced Williams to 252 months of imprisonment on Count One, to be followed by five years of supervised release. (Sentencing Hr'g Tr. 39:13–15, ECF No. 355; Judgment in a Criminal Case, ECF No. 315.) Williams did not appeal.

On May 12, 2014, the district court received Williams's § 2255 motion asserting that his trial counsel was ineffective for failing to file a notice of appeal. (§ 2255 Motion 1, ECF No. 358.) By Memorandum Order entered May 27, 2014, the district court ordered the United States Attorney to file a fully briefed response to the § 2255 motion within sixty days. (ECF No. 359.) On July 24, 2014, a response was filed. (ECF No. 363.) The petitioner filed a reply to the response on September 3, 2014. (ECF No. 364.)

On October 9, 2015, Williams filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c). (ECF No. 405.) The district court granted the motion based on a sentencing range from the United States Sentencing Guidelines that had been lowered and made retroactive, reducing Williams's sentence from 252 months to 202 months. (ECF No. 418.)

On November 19, 2015, the district court referred Williams's ineffective assistance of counsel claim to the undersigned Magistrate Judge for an evidentiary hearing. (ECF No. 426.) On December 14, 2015, the petitioner requested additional time to file his response, and the district court granted that request. (ECF Nos. 427, 428.) Counsel was appointed to represent Williams with regard to the ineffective assistance of counsel claim. (ECF Nos. 436, 440.) By Order entered March 8, 2016, the evidentiary hearing was scheduled, and the parties were instructed to submit proposed findings of fact and conclusions of law before the evidentiary hearing and revised findings no later than eleven days after the filing of the transcript of the hearing. (ECF No. 446.)

On April 4, 2016, the evidentiary hearing was held before the undersigned. The transcript of the evidentiary hearing was filed on April 15, 2016. (ECF No. 463.) On April 25, 2016, Williams filed his revised proposed findings of fact and conclusions of law. (ECF No. 465.) The United States filed its revised proposed findings of fact and conclusions of law on the same day. (ECF No. 466.)

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses

and reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393–94, 409 n.15 (4th Cir. 2004).

### III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on the record, as well as the testimony and exhibits submitted at the evidentiary hearing.

### A.    Williams's Guilty Plea

1.    On January 17, 2013, Judge Hudson conducted Williams's plea colloquy, during which Williams pled guilty to Count One of the superseding indictment, with a written plea agreement and a written statement of facts. (ECF Nos. 259, 260, 354.) The transcript of the plea hearing (ECF No. 354) and the plea agreement (ECF No. 259) were admitted into evidence at the evidentiary hearing as Government's Exhibits 1 and 2 respectively, having also been filed as ECF Nos. 455–1 and 455–2 respectively.

2.    Under oath at the plea hearing, Williams informed the district court that he had a sufficient opportunity to discuss the case with Ravenell and that he was satisfied with Ravenell's representation:

> The Court:     Prior to coming to court this afternoon, have you had a thorough opportunity to discuss this case with your attorney, Mr. Ravenell?
>
> Mr. Williams: Yes, sir.
>
> The Court:     Are you entirely satisfied with his services?
>
> Mr. Williams: Yes, sir.
>
> The Court:     Has he done everything reasonable you have asked him to do in connection with this case?
>
> Mr. Williams: Yes, sir.

(Guilty Plea Hr'g Tr. 8:11–20, ECF No. 354.)

3.      Williams confirmed that he decided to plead guilty to the charge because he was in fact guilty of conspiracy to distribute cocaine hydrochloride. (Guilty Plea Hr'g Tr. 11:2–5, ECF No. 354.)

4.      Williams signed the written plea agreement, indicating that he "agree[d]" [he had] consulted with [his] attorney and fully underst[ood] all rights with respect to the pending criminal indictment." (Plea Agreement 10, ECF No. 259.) He signed the plea agreement, acknowledging he "read this plea agreement and carefully reviewed every part of it with [his] attorney. [He] [understood] this agreement and voluntarily agree[d] to it." (*Id.*) Williams also confirmed this under oath during the plea colloquy, responding "yes, sir" when asked if he had an opportunity to discuss the agreement with his attorney, and responding "no, sir" when asked if there was anything about the agreement that he did not understand. (Guilty Plea Hr'g Tr. 11:10–12:6, ECF No. 354.)

5.      Williams signed the statement of facts, indicating that he had "consult[ed] with [his] attorney and [he] stipulate[d] that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proven the same beyond a reasonable doubt." (Statement of Facts 3, ECF No. 260.) Williams also confirmed this under oath during questioning in the plea hearing. (Guilty Plea Hr'g Tr. 22:6–23, ECF No. 354.)

6.      During the plea colloquy, Judge Hudson informed Williams of the penalties associated with the charge: "[The charge] carries a mandatory minimum of 10 [years], a maximum of life, a fine not to exceed $10 million, and five years of supervised release. You understand that supervised release is kind of like being on parole?" Williams replied in the affirmative. Judge Hudson continued, "And a special assessment of $100." (Guilty Plea Hr'g Tr. 18:10–21, ECF No. 354.) Williams confirmed that he knew he was facing at least ten years in

prison. (Guilty Plea Hr'g Tr. 18:14–15, ECF No. 354.) The plea agreement listed these penalties as well. (Plea Agreement ¶ 1, ECF No. 259.)

7.      The plea agreement provided that there was no agreement as to sentencing that was binding on the sentencing judge, that the sentencing judge would determine Williams's sentence, advised by the Sentencing Guidelines and 18 U.S.C. § 3553(a), and that the sentencing judge could depart upward or downward from the advisory range under the Sentencing Guidelines if appropriate, "subject only to review by higher courts for reasonableness." (Plea Agreement ¶ 5, ECF No. 259.) The plea agreement also explained that any estimate of the ultimate sentence "is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court." (*Id.*) Judge Hudson orally informed Williams that any estimate regarding the ultimate sentence imposed could only be an "educated estimate" but did not constitute a basis on which Williams could attempt to withdraw his guilty plea. (Guilty Plea Hr'g Tr. 20:6–24, ECF No. 354.) Judge Hudson also addressed the bolded portion of paragraph 5 of the plea agreement that states that the United States and Williams recommend a number of provisions of the Sentencing Guidelines, pursuant to Fed. R. Crim. P. 11(c)(1)(B) (Guilty Plea Hr'g Tr. 12:20–25, ECF No. 354), and he specifically addressed the statement in paragraph 5 of the plea agreement that the United States agrees to recommend a sentence no higher than the mid-range of the advisory range based on the Sentencing Guidelines. (Guilty Plea Hr'g Tr. 16:19–17:10, ECF No. 354).

8.      Williams stated under oath that no one had made any other promises, other than those contained in the plea agreement. (Guilty Plea Hr'g Tr. 12:2–6, ECF No. 354.) The plea agreement also states that "the defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those

set forth in writing in this plea agreement, to cause the defendant to plead guilty." (Plea Agreement ¶ 15, ECF No. 259.)

9. The plea agreement contained a waiver of appeal provision that stated that "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea Agreement ¶ 6, ECF No. 259.) Judge Hudson questioned Williams about this appeal waiver several times during the plea colloquy, first stating, "A plea of guilty is final and cannot be appealed," and then asking, "Do you understand you can't appeal a guilty plea?" Williams answered, "Yes, sir." (Guilty Plea Hr'g Tr. 15:17–22, ECF No. 354.) Judge Hudson reminded Williams again later during the colloquy that he could not appeal but that the United States could appeal, stating, "They [the United States] can appeal, but you've waived your right of appeal. Do you have any questions about that?" Williams responded, "No, sir." (Guilty Plea Hr'g Tr. 21:4–21, ECF No. 354.)

10. Prior to taking the guilty plea, Judge Hudson asked Williams if there was anything they had gone over that he did not understand, to which Williams responded, "No, sir," and Judge Hudson gave Williams a final opportunity to ask any questions about the plea agreement, asking Williams if he had "any questions [he] would like to ask [Judge Hudson] about [his] plea of guilty, or the Constitutional rights [he had] waived this afternoon," to which Williams again responded, "No, sir." Judge Hudson also asked Williams if he needed any more time to confer with Ravenell before he entered his plea of guilty, to which Williams responded, "No, sir." Judge Hudson asked Williams if anyone instructed him how to answer the questions during the plea colloquy, and Williams responded, "No, sir." Williams entered a plea of guilty to Count One of the superseding indictment, and Judge Hudson accepted Williams's plea of guilty as voluntarily, knowingly, and intelligently entered with the understanding of the nature of the

charge, the consequences of the plea, and the penalty provisions he faced. (Guilty Plea Hr'g Tr. 23:10–25:2, ECF No. 354.)

### B. Williams's Sentencing Hearing

11. At Williams's April 19, 2013 sentencing hearing, Williams objected to paragraphs thirty-two through thirty-nine of the Presentence Investigation Report ("PSR"). (Sent. Hr'g Tr. 4:9–10, ECF No. 355.) Judge Hudson overruled Williams's objection on the grounds that the contested paragraphs were a part of the overall investigation but stated that the information would not be considered in sentencing Williams. (Sent. Hr'g Tr. 6:20–7:1, ECF No. 355.) The transcript of the sentencing hearing (ECF No. 355) was admitted into evidence at the evidentiary hearing as Exhibit 2 by Williams, having been filed as ECF No. 459-1. (Evid. Hr'g Tr. 36:11–37:11, ECF No. 463.)

12. Judge Hudson found, pursuant to the PSR, that Williams's total offense level was 37 and that his criminal history placed him within criminal history category II, which yielded an advisory Sentencing Guidelines range of 235 to 293 months of imprisonment. (Sent. Hr'g Tr. 7:24–8:2, ECF No. 355.)

13. Ravenell confirmed that he believed the Sentencing Guidelines were properly computed. (Sent. Hr'g Tr. 8:3–5, ECF No. 355.)

14. During its argument as to the appropriate sentence for Williams, the United States asked Judge Hudson to sentence Williams to 264 months of imprisonment, in the middle of the advisory range, as provided in paragraph 5 of the plea agreement. (Sent. Hr'g Tr. 15:6–10, ECF No. 355.)

15. The defense presented Wayne Epps to provide testimony in support of Williams's motion for a downward variance at the sentencing hearing. (Sent. Hr'g Tr. 9:5–14:12, ECF No. 355.)

16.    Ravenell asked Judson Hudson to grant a downward variance from the advisory range and sentence Williams to 180 months imprisonment. (Sent. Hr'g Tr. 28:9–10, ECF No. 355.) The United States argued in opposition to the downward variance. (Sent. Hr'g Tr. 15:18–19:11, ECF No. 355.) After hearing the evidence presented and the argument from both parties, Judge Hudson denied Williams's motion for downward variance. (Sent. Hr'g Tr. 32:6–7, ECF No. 355.)

17.    Prior to imposing a sentence, Judge Hudson gave Williams an opportunity to address the Court:

> The Court:    All of those factors will be taken into consideration, but I'd like to hear from you before I decide where within those guidelines an appropriate sentence can be found. Go right ahead, sir.
>
> Mr. Williams: Good morning.
>
> The Court:    Good morning, sir.
>
> Mr. Williams: To the people and the Court, the Honorable Judge Henry Hudson. I stand before you today to be sentenced of a crime of which I pled guilty to, and I must take full responsibility for in which I'm accused.

(Sent. Hr'g Tr. 33:9–18, ECF No. 355.) Williams spoke for several minutes about his life and apologized for his actions. (Sent. Hr'g Tr. 33:13–38:20, ECF No. 355.)

18.    Considering the Sentencing Guidelines as advisory and having reviewed the factors under 18 U.S.C. § 3553(a), Judge Hudson sentenced Williams to 252 months of imprisonment to be followed by five years of supervised release. (Sent. Hr'g Tr. 39:3–13, ECF No. 355.)

19.    At the conclusion of the sentencing, Judge Hudson stated to Williams:

> Now, Mr. Williams, as a part of your plea agreement, you have waived your right of appeal as to almost all sentencing issues

in this case. But if you feel I have done anything unlawful or improper that you wish to appeal to the U.S. Court of Appeals for the Fourth Circuit, that appeal must be noted within 14 days of today.

So, I would suggest that you take a few minutes and talk to Mr. Ravenell about whether or not anything has occurred in this case that you wish to appeal, because if you wish to do so he has got to put that process in motion almost immediately.

(Sent. Hr'g Tr. 40:24–41:9, ECF No. 355.)

### C. Williams's Account of His Communications with Ravenell Regarding the Plea Agreement and During the Plea Hearing

20.     At the evidentiary hearing, Williams testified that during the plea colloquy he failed to understand Judge Hudson's questions because he "was under duress, and half of this stuff that was going on was cloudy in [his] mind." (Evid. Hr'g Tr. 17:11–13, ECF No. 463.) To support this argument, Williams pointed to the statement he made at his sentencing hearing on April 19, 2013, three months later, where he informed Judge Hudson that he was nervous as evidence that he had expressed his feelings of cloudiness and duress. (Evid. Hr'g Tr. 17:14–18:11, ECF No. 463.)

21.     At the evidentiary hearing, counsel for the United States asked Williams, "My question is, on January 17th, on the day of your plea, did you inform the Court that you weren't understanding what he was saying to you?" Williams responded, "No." (Evid. Hr'g Tr. 18:12–15, ECF No. 463.)

22.     Later during the evidentiary hearing, in response to a question from counsel for the United States with regard to why he responded "no, sir" when Judge Hudson asked him, "Is there anything we have gone over this afternoon that you did not understand?" Williams stated, "I didn't understand," but then immediately changed his answer, stating, "[I]t wasn't that I didn't understand the question. It was just procedure to me at that time to answer with certain

answers." (Evid. Hr'g Tr. 20:12–21, ECF No. 463.) Counsel for the United States questioned Williams further, "What do you mean 'procedure'?" Williams explained:

> Mr. Williams: At this time all motions were being denied.
>
> Mr. Duffey: Right.
>
> Mr. Williams: Nothing was going in my favor. So at this time it was to me just time to get it over with and get going. First of all, I didn't know that I could even be charged in a state where nothing took place in my case. So the whole thing was just—it was just an out of body experience for me. I'll put it like that.
>
> Mr. Duffey: Okay. Well, the next question from the Court was, "Do you have any questions you would like to ask me about your plea of guilty or the constitutional rights you have waived this afternoon?" That's a pretty straightforward question, isn't it?
>
> Mr. Williams: Yes, sir.
>
> Mr. Duffey: ["]Do you have any questions about what happened this afternoon?["] You'll agree with me that's pretty wide open, right?
>
> Mr. Williams: Yes.
>
> Mr. Duffey: And your response was, "No, sir"?
>
> Mr. Williams. Right.
>
> Mr. Duffey: Did you not understand that question?
>
> Mr. Williams: I understood it.
>
> Mr. Duffey: But you chose not to ask any questions?
>
> Mr. Williams: Yes.
>
> Mr. Duffey: Even though your testimony was you were cloudy and not understanding anything the judge was saying to you?
>
> Mr. Williams: Yes, sir.

(Evid. Hr'g Tr. 20:22–21:25, ECF No. 463.) During the evidentiary hearing, the Court asked Williams, "So when the judge asked you, 'How do you plead; guilty or not guilty?' and you said, 'Guilty,' did you understand that question?" Williams responded, "Yes, sir." (Evid. Hr'g Tr. 22:10–16, ECF No. 463.) The Court also asked Williams if, after the plea hearing, he wrote a letter to Ravenell stating that he did not "understand what happened with respect to that plea hearing," to which Williams responded, "No, I didn't." (Evid. Hr'g Tr. 35:5–22, ECF No. 463.)

23.    Williams testified that he asked Ravenell to appeal the denial of the pretrial motions, but he also testified that he could not remember whether he asked Ravenell to do so after the motions hearing on January 10, 2013 or after the sentencing hearing on April 19, 2013. Williams also testified that Ravenell "said we preserved issues," but Williams could not recall whether Ravenell said that immediately after the motions hearing or later, after the sentencing hearing. (Evid. Hr'g Tr. 25:1–24, ECF No. 463.)

24.    An affidavit from Williams's wife, Tabitha D. Williams, was admitted into evidence at the evidentiary hearing as Exhibit 1 on behalf of Williams, after having been filed as ECF No. 459-2. In that affidavit, Tabitha D. Williams claims that she was told by Ravenell in December 2012 and "on and about January 18th through January 25th [2013]" that he would file an appeal on behalf of her husband, Dion L. Williams. (ECF No. 459-2.) Tabitha D. Williams was not present at the evidentiary hearing.

25.    Williams testified that he signed the plea agreement waiving his rights to appeal but that he thought he was not waiving his rights to appeal the denial of pretrial motions, specifically the motion to change venue and the motion to suppress. (Evid. Hr'g Tr. 27:19– 29:14, ECF No. 463.)

26.     Williams testified that during the plea colloquy he paused before answering a question in the affirmative and leaned over to Ravenell who told him, "Just go ahead. Just say yes." (Evid. Hr'g Tr. 24:19–25, ECF No. 463.)

### D.     Ravenell's Account of His Communications with Williams Regarding the Plea Agreement and During the Plea Hearing

27.     At the evidentiary hearing, Ravenell confirmed that on January 10, 2013, Williams expressed a desire to appeal the denials of the motion to change venue and the motion to suppress but also confirmed that Williams did not give him an instruction to appeal. (Evid. Hr'g Tr. 51:15–52:7, ECF No. 463.)

28.     At the evidentiary hearing, Ravenell testified that he and Williams talked about the plea agreement "on a couple of occasions" and that they "went through [the plea agreement] line by line." (Evid. Hr'g Tr. 41:18–42:7, ECF No. 463.) Ravenell testified that Williams was "an intelligent man," that they talked about the waiver "specifically," and that Ravenell "had no doubt" that Williams understood that he was waiving his right to appeal. (Evid. Hr'g Tr. 44:15–45:21, ECF No. 463.) Further, Ravenell explained he "would not have let [Williams] proceed if he thought [Williams] didn't [understand]." (Evid. Hr'g Tr. 45:19–20, ECF No. 463.)

29.     Ravenell testified that he fought to get a conditional guilty plea that would permit Williams to appeal the denials of the motion to change venue and motion to suppress, but the government would not agree to a conditional plea. (Evid. Hr'g Tr. 42:14–16, ECF No. 463.) Ravenell testified that he explained this outcome to Williams and that Williams was not unclear about the fact that he was waiving his right to appeal those motions. With regard to the fact "that he was waiving his right to appeal those motions," Ravenell testified that Williams was "[n]ot happy, but [was] not unclear." (Evid. Hr'g Tr. 42:24–43:8, ECF No. 463.)

30.     Ravenell testified that prior to the plea hearing on January 17, 2013, there was not "any doubt in [his] mind that [Williams] understood that [the waiver] included these pretrial motions." (Evid. Hr'g Tr. 44:15–24, ECF No. 463.)

31.     Ravenell testified that while "[i]t's certainly possible that Mr. Williams leaned over to me and asked me something [during the plea hearing], [] I would never just tell him to go forward and just answer questions." (Evid. Hr'g Tr. 45:5–8, ECF No. 463.)

### E.     Williams's Account of His Post-Sentencing Communications with Ravenell Regarding His Direct Appeal

32.     At the evidentiary hearing, Williams testified that after his sentencing hearing, he asked Ravenell "for like later assistance with the appeal" and "basically how long does it take to get the procedure going," although he could not specifically remember what he said. (Evid. Hr'g Tr. 8:22–9:9, ECF No. 463) Williams further testified that he remained in Virginia for about a week after sentencing, and he did not have any conversations with Ravenell after April 19, 2013 while he was in Virginia. Williams testified that he did not recall if he had any conversations with Ravenell while he was in prison in California, but then answered "no" in response to the question, "Have you had conversations with [Ravenell] since April the 19th of 2013?" (Evid. Hr'g Tr. 9:11–10:2, ECF No. 463.)

33.     Williams testified that he later asked Calvin Gray to contact Ravenell about noting an appeal on his behalf after sentencing. (Evid. Hr'g Tr. 10:21–11:4, ECF No. 463.)

34.     Williams testified that his wife spoke to Ravenell occasionally but that such communications were "more-so" before sentencing. (Evid. Hr'g Tr. 11:1–4, ECF No. 463.)

35.     Williams testified he did not send correspondence or documentation from prison to Ravenell asking him to note the appeal following the April 19, 2013 sentencing, nor did he

write Ravenell asking what happened to his appeal. (Evid. Hr'g Tr. 11:6–10, 26:4–18, ECF No. 463.)

**F.      Ravenell's Account of His Post–Sentencing Communications with Williams Regarding His Direct Appeal**

36.      Ravenell testified that he does not remember whether Williams asked him about an appeal during the time between the January 17, 2013 plea hearing and the April 19, 2013 sentencing hearing. (Evid. Hr'g Tr. 46:20–22, ECF No. 463.) Moreover, Ravenell testified that Williams did not inquire about the status of his appeal after the sentencing hearing until Williams's brother approached Ravenell about it within one month of the evidentiary hearing, i.e., April 2016. (Evid. Hr'g Tr. 46:23–47:11, ECF No. 463.)

37.      Ravenell testified that he was approached by Williams's brother who asked Ravenell to sign an affidavit stating that Williams had asked Ravenell to file an appeal and that Ravenell remembered the request, but Ravenell refused to sign an affidavit "because [he did not] have a recollection of [such a request]." (Evid. Hr'g Tr. 47:6–25, ECF No. 463.)

38.      Ravenell testified that it was his understanding that Williams had waived his right to appeal in the plea agreement. (Evid. Hr'g Tr. 49:6, ECF No. 463.) Further, if Williams had asked Ravenell to appeal, such an inquiry would have raised an issue that would have required Ravenell to reach out to Williams because Ravenell's "view is that [Williams] waived his right to appeal with the plea agreement," and Ravenell does not recall having any conversations about an appeal after sentencing. (Evid. Hr'g Tr. 49:1–50:14, ECF No. 463.)

39.      Additionally, Ravenell does not have documentation of any discussion of an appeal between himself and Williams after sentencing. (Evid. Hr'g Tr. 46:10–13, ECF No. 463.) He also has no recollection of receiving any correspondence from Williams after the guilty plea,

after the sentencing, or any time thereafter asking Ravenell to note an appeal. (Evid. Hr'g Tr. 54:11–24, ECF No. 463.)

40.     Government Exhibit 3, admitted into evidence at the evidentiary hearing, is an affidavit from local counsel John LaFratta whose "role in this case [after Ravenell and Chun were retained] was merely to file, accept, deliver, and receive various pleadings for the case." LaFratta states in the affidavit that he never had any discussions with Williams, his wife, or anyone else regarding an appeal. (Affidavit of John G. LaFratta, ECF 455-3; Evid. Hr'g Tr. 55:16–56:9, ECF No. 463.)

**G.      Ravenell's Version of Events Is More Credible than Williams's Version**

41.     Having considered the above and having weighed the credibility of the witnesses, the Court finds that Williams never expressly requested Ravenell to file an appeal of his case and never expressed an interest in appealing his case immediately following the sentencing hearing, which would have been the appropriate time to file an appeal.

42.     Williams's testimony lacks credibility and is not supported by the contemporaneous record. The plea documents and plea hearing made clear that Williams had waived his right to any appeal. Williams asserts that he was "cloudy" and failed to understand the plea agreement, but he never expressed this to Judge Hudson or to Ravenell. The affidavit of Tabitha D. Williams also lacks credibility regarding any conversation she had with Ravenell after the plea hearing on January 17, 2013 due to a lack of contemporaneous records corroborating any conversation. Finally, Williams's claim that he assumed the appeal would be taken care of lacks credibility because he failed to correspond with Ravenell about the status of the appeal after being sentenced and going to prison.

43.     Williams repeatedly confirmed under oath during his January 17, 2013 plea hearing that he pled guilty because he was guilty and that he signed and understood his plea

agreement. His responses under oath during the plea hearing and his acknowledgement of the terms of his plea agreement thoroughly demonstrate that he intended to plead guilty and that knew he was waiving his right to appeal.

44.     Also during the plea hearing, Williams affirmed under oath that no one had made any other promises other than those contained in the plea agreement, and the plea agreement contained almost identical language stating that "no . . . promises . . . have been made, nor agreements reached, other than those set forth in writing in this plea agreement." (Guilty Plea Hr'g Tr. 12:2–ECF No. 354; Plea Agreement ¶ 15, ECF No. 259.) Thus, there was no separate agreement or promise that would permit Williams to appeal the denial of the pretrial motions.

45.     Williams waited until approximately April 2016, almost three years after his sentencing and well beyond the fourteen-day appeal period, to have his brother contact Ravenell. Williams's silence during the critical fourteen-day period and thereafter demonstrates that he understood that he waived his right to appeal when he pled guilty.

46.     The documentary evidence does not support Williams's testimony or Mrs. Williams's affidavit. Williams never inquired regarding the status of any appeal and never expressed frustration, disappointment, or concern when Ravenell failed to visit Williams or communicate with him regarding an appeal after sentencing.

47.     The Court finds Ravenell's version of events to be more credible and supported by the contemporaneous record.

### IV. Analysis

**A.     Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal**

The standard set forth by the Supreme Court of the United States in *Strickland v. Washington* governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In

*Strickland*, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's right to reasonably effective assistance of counsel. *Id.* at 687. To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must demonstrate actual prejudice from the deficiency. *Id.* at 694.

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal. *See* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. This determination must take into account "all the information counsel knew or should have known." *Id.*

If a consultation about appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea

agreement [because the defendant has waived his right to appeal] and harmful to the client's interests."[1] *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007). "When applying *Flores-Ortega*, [the Fourth Circuit] has found a breach of the *Strickland* duty usually because the defendant said something to his counsel indicating that he had an interest in appealing." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (concluding that defense attorney was justified in believing that a rational defendant in Cooper's situation would not want to appeal even though he had not waived his appeal rights in a plea agreement because (1) Cooper's actions and words expressed clearly a desire not to prolong the case but to put it behind him, and (2) Cooper received the sentence he bargained for with the government, so his expectations were met).

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484. "Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that

---

[1] The Court notes that a split of authority exists on the issue of whether a lawyer is *per se* ineffective when the lawyer fails to file a notice of appeal despite his client's wishes, even when the defendant has waived his right to appeal and has no meritorious issues to raise. A minority of circuits hold that counsel is not *per se* ineffective for honoring a client's written waiver of appeal instead of the client's later oral instruction to appeal. *See, e.g., Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *United States v. Mabry*, 536 F.3d 231, 240–42 (3d Cir. 2008); *see also United States v. Arevalo*, No. 5:07–153–JMH–JGW, 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). Recognizing that this non-binding precedent exists, this Court nonetheless adheres to the principles announced by the Fourth Circuit. *See United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).

his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (quoting *Flores-Ortega*, 528 U.S. at 486).

**B.      Williams's Claim Fails**

**1.      Williams Did Not Timely Instruct Ravenell to File an Appeal**

The record demonstrates that Williams did not instruct Ravenell to file an appeal within the fourteen-day period following his sentencing. Williams's testimony that he assumed counsel would file an appeal based on a conversation that took place prior to entering into the plea agreement lacks credibility because Williams waived his right to appeal after that conversation and then did not attempt to communicate with Ravenell after sentencing. Conversely, Ravenell testified credibly that Williams never instructed him to file an appeal after sentencing, and this is supported by the lack of documentary evidence to show Williams's instructions. The contemporaneous record supports Ravenell's testimony.

Williams's responses under oath to Judge Hudson's questions during the plea hearing demonstrate that Williams intended to plead guilty and knew, as a part of that plea, that he was waiving his right to appeal. Williams testified under oath during the plea hearing that he knew he was giving up his right to appeal as a part of his plea. At sentencing, Williams apologized to the Court and took full responsibility for his actions. His request for a downward variance further confirms that Williams knew he waived his right to appeal and intended to do so. Moreover, generally, if the United States has agreed to a conditional guilty plea, a provision reflecting that will be set forth in the written plea agreement and will be addressed by judge taking the defendant's guilty plea. There was no such provision in this plea agreement nor did Judge Hudson discuss a conditional plea during the colloquy. Ravenell confirmed that he sought a conditional plea but that the United States would not agree to a conditional plea in Williams's

case, and Ravenell confirmed that Williams understood that fact and was not happy with the government's refusal to do so.

Williams never expressed frustration when Ravenell failed to visit or contact him in prison. The lack of documentary evidence clearly establishes that Williams did not attempt to contact Ravenell after his sentencing hearing. During Williams's sentencing hearing, Judge Hudson clearly and specifically told Williams that if he wanted to file an appeal he needed to speak with Ravenell to get that process in motion almost immediately, yet Williams did nothing.

### 2. Ravenell Had No Duty to Consult with Williams Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Ravenell had a duty to consult with Williams about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* at 480. If the defendant pled guilty, the Court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id.*

The Court finds that Ravenell had no duty to consult with Williams about an appeal. First, the record demonstrates that a rational defendant in Williams's position would not have pursued an appeal. Williams pled guilty pursuant to a written plea agreement and waived his right to appeal his conviction, any sentence within the statutory maximum, and the manner in

which that sentence was determined. During the evidentiary hearing, Williams admitted that, during the plea hearing, "it was to me just time to get it over with and get going" (Evid. Hr'g Tr. 20:22–21:1, ECF No. 463), similar to the statements made by the defendant in *Cooper*, who also indicated his desire to put his case behind him. *Cooper*, 617 F.3d at 314. Also like the defendant in *Cooper*, Williams ultimately received the sentence for which he had bargained during the plea negotiations with the United States. *Id.*

After ruling on Williams's objections to the Presentence Report, Judge Hudson adopted the advisory range as computed by the probation officer. Judge Hudson selected Williams's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Williams's sentence was also within the advisory Guidelines range and thus may be considered presumptively reasonable on appeal. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010). Moreover, Ravenell knew that he had explained to Williams that the United States would not agree to a conditional guilty plea and that Williams had, thereafter, agreed to plead guilty despite having to waive his right to appeal in order to receive other concessions from the United States. Based on these considerations, Williams cannot demonstrate that a rational defendant would have wanted to appeal his conviction or sentence.

Williams likewise has failed to demonstrate that he showed any interest in filing an appeal during the fourteen-day appeal period. Williams's testimony that he told Ravenell to appeal the denials of the pretrial motions, although he could not remember specifically when he did this, does not support Williams's purported assumption that Ravenell would file an appeal after the April 19, 2013 sentencing hearing. Further, Williams's claim that he was cloudy and did not understand the plea agreement lacks credibility because Ravenell testified credibly that

he and Williams went over the plea agreement line by line and that Williams never requested that he file an appeal. Accordingly, the Court finds that Ravenell had no duty to consult with Williams regarding an appeal.

## V. Conclusion

For the foregoing reasons, it is hereby RECOMMENDED that the Court DISMISS Williams's ineffective assistance of counsel claim and DENY the § 2255 motion.

Williams is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order denying the motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and to the Honorable Henry E. Hudson.

It is so ORDERED.

/s/

Richmond, Virginia
Date: October _3_, 2016

Roderick C. Young
United States Magistrate Judge