# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 3:12cr47-4–HEH |
| | ) |
| DION LEVERING WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER
### (Denying Defendant's Motions for Compassionate Release)

THIS MATTER is before the Court on Dion Williams's ("Defendant") Motion for Compassionate Release (the "Motion"), filed on September 9, 2020. (ECF No. 573.) Defendant seeks release from FCI Big Spring[1] in light of the threat posed by the novel coronavirus ("COVID-19"). Defendant and the Government have filed memoranda supporting their respective positions.[2] Defendant's Motion is ripe for review. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Local Crim. R. 47(J). For the reasons that follow, the Court will deny Defendant's Motion.

---

[1] *See* FED. BUREAU OF PRISONS, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Nov. 22, 2021). When Defendant filed his initial Motion, he was imprisoned at FCI Florence (Mot. at 2, ECF No. 573), however, as of the filing of the supplemental brief on October 8, 2021, he is imprisoned at FCI Big Spring (ECF No. 626 at 2).

[2] Defendant was also asked to file an update as to his medical conditions on August 6, 2021. (ECF No. 619.) Defendant filed that update on October 8, 2021 (ECF No. 626) and the Court will consider the update in its analysis of Defendant's original Motion.

Defendant was part of a large-scale drug trafficking conspiracy. Before being arrested, Defendant contacted Hiram Alvarez and asked about purchasing 100 kilograms of cocaine for approximately $2,500,000. (PSR ¶ 40, ECF No. 304.) Hiram Alvarez then contacted a cooperating source about supplying Defendant with the cocaine. (*Id.*) On January 27, 2012, the cooperating source, Defendant, and other co-conspirators met at an apartment to count approximately $1,500,000 worth of US Currency for the drug transaction. (*Id.*) On this same night, law enforcement executed a search warrant on the apartment and found Defendant and two co-conspirators in possession of approximately $1,499,377. (*Id.*) For Sentencing Guidelines purposes, Defendant was held accountable for 100 kilograms of cocaine hydrochloride. (*Id.* ¶ 41.)

On January 17, 2013, Defendant pled guilty to a one-Count Indictment charging him with Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine Hydrochloride, in violation of 21 U.S.C. § 846. (*Id.* ¶¶ 7, 11.) On April 19, 2013, the Court sentenced Defendant to 252 months of imprisonment and 5 years of Supervised Release to follow. (J., ECF No. 315.) The Court later reduced Defendant's sentence to 202 months. (ECF No. 418.) Defendant's projected release date is December 11, 2027.[3]

"'A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations omitted) (quoting 18 U.S.C. § 3582(b)). This Court has no inherent authority to modify a

---

[3] *See* FED. BUREAU OF PRISONS, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Nov. 22, 2021).

2

defendant's term of imprisonment once it has become final; rather, Congress must grant this Court the power to do so. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (quoting *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009)). Accordingly, this Court "'may not modify a term of imprisonment once it has been imposed' unless the Bureau of Prisons ("BOP") moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 *expressly* permits the court to do so." *Id.* (quoting § 3582(c)).

As amended by the First Step Act, § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence on grounds of compassionate release under two circumstances. Such a request must come before the court either: (1) on the Director of the BOP's motion, or (2) on the defendant's motion, if "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." § 3582(c)(1)(A). A defendant may file a compassionate release motion with the district court 30 days after filing a request with the BOP, and "before the BOP even has considered whether he qualifies for relief under the catch-all provision" found in the Sentencing Commission's Application Note 1(D). *United States v. McCoy*, 981 F.3d 271, 276–77, 283 (4th Cir. 2020). The catch-all provision allows "the BOP and only the BOP to identify 'other reasons'" that warrant a sentence reduction. *Id.* at 280. "If the BOP nevertheless retains its determinative role under Application Note 1(D), then such defendants would be required either to forgo the 30-day lapse provision and wait for a BOP determination, or

3

to forgo reliance on the catch-all provision in exchange for a timely decision by the district court." *Id.* at 283.

In this case, the BOP has not made a motion on Defendant's behalf. Instead, Defendant filed the instant motion himself, through counsel. Defendant previously submitted a request for compassionate release to the Warden of FCI Florence on April 26, 2020. (Mot., Ex. 2 at 1–3.) The Warden denied the request on May 8, 2020. (*Id.* at 4.) Thus, the Court may consider Defendant's motion as over 30 days have now lapsed from his request for compassionate release with his facility.

Where a defendant satisfies one of the preconditions enumerated by the statute, § 3582(c)(1)(A)(i) permits a court to modify a defendant's sentence when "extraordinary and compelling reasons warrant such a reduction."[4] In so doing, a court must consider the factors set forth in 18 U.S.C. § 3553(a), including the need to promote respect for the law, deter criminal conduct, and protect the public. § 3582(c)(1)(A); *United States v. Kibble*, 992 F.3d 326, 330–31 (4th Cir. 2021) (finding that compassionate release was not warranted after considering both the extraordinary and compelling reasons and the § 3553(a) factors).[5]

---

[4] The Court may also grant such a modification if it finds that the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under § 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the BOP that the defendant is not a danger to the safety of any other person or the community. § 3582(c)(1)(A)(ii). However, this provision is inapplicable here as Defendant does not appear to seek relief under this provision.

[5] Section 3582(c)(1)(A) also requires that "any reduction is consistent with applicable policy statements issued by the Sentencing Commission." However, currently no policy statement exists that applies to compassionate release motions filed by defendants in the context of

4

In this case, Defendant argues that, because he suffers from hypertension and stage II chronic kidney disease, he is particularly likely to experience severe symptoms should he contract COVID-19. (Mot. at 2.) Defendant's afflictions do make it more likely that he would experience severe symptoms if infected with COVID-19.[6] Despite suffering from these exacerbating illnesses, Defendant refused the Moderna vaccine when it was offered to him on March 9, 2021. (ECF No. 627 at 11.) Nevertheless, other factors counsel against releasing Defendant early.

The current conditions at FCI Big Spring do not support Defendant's early release. There have been 705 positive cases of COVID-19 at FCI Big Spring, and no inmates or staff members are currently infected. *See* FED. BUREAU OF PRISONS, *COVID-19 Coronavirus*.[7] The BOP has vaccinated 879 inmates and 99 staff members across FCI Big Spring. *Id.* Furthermore, the BOP is taking COVID-19 seriously by instituting the following precautionary measures: suspending visitations; limiting inmate movement and congregate gatherings to ensure social distancing; screening and COVID-19 testing for new inmates, staff, and contractors; quarantining inmates who test positive regardless of symptoms; and providing and encouraging all inmates to wear masks when social

---

COVID-19. *Kibble*, 992 F.3d at 330. Thus, the Court need not address this statutory requirement at this time.

[6] CNTRS. FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults (last visited Nov. 22, 2021) (listing hypertension and chronic kidney disease as contributors to severe COVID-19).

[7] Available at www.bop.gov/coronavirus/ (last visited Nov. 23, 2021).

5

distancing cannot be maintained. *See* FED. BUREAU OF PRISONS, *BOP Modified Operations* (Nov. 25, 2020).[8] FCI Big Spring's low number of active cases and high number of vaccinations demonstrates that the facility is effectively controlling the spread of the virus and Defendant is not placed at an increased risk due to his incarceration.

Defendant's early release also fails to satisfy the relevant § 3553(a) factors—such as the need to promote respect for the law, deter criminal conduct, and protect the public. Defendant was held accountable for 100 kilograms of cocaine hydrochloride. (PSR ¶ 41.) When law enforcement executed the search warrant, Defendant and his co-conspirators were in possession of approximately $1,499,377, which they intended to use to purchase large amounts of cocaine. (*Id.* ¶ 40.) In addition, there were two handguns in the apartment. (*Id.*) Given the seriousness of the offense, and the large amount of cocaine attributed to Defendant, a reduced sentence would not adequately promote respect for the law, protect the public, or deter Defendant from future criminal conduct. Further, Defendant plans to return to California if released. (Mot. at 20.) The co-conspirator that Defendant contacted, and multiple other co-conspirators are from California. (PSR ¶ 40.) Allowing Defendant to return to California before serving his full sentence would potentially put the public at risk and may lead to further criminal activity by Defendant.

The Court commends Defendant for his participation in rehabilitative activities while incarcerated, including participating in drug education, and restaurant management

---

[8] Available at https://www.bop.gov/coronavirus/covid19_status.jsp.

classes, which will be beneficial to running the restaurant he owns with his wife upon release (Mot., Ex. 4), but it does not outweigh the other factors the Court must consider.

Ultimately, this Court maintains discretion under § 3582(c)(1)(A) to release Defendant. *See Kibble*, 996 F.3d at 332 (concluding that the district court did not abuse its discretion in denying defendant's motion for compassionate release). Therefore, having reviewed the record before the Court, Defendant's personal characteristics and criminal history, and the § 3553(a) factors, this Court finds no sufficient justification for Defendant's early release. Accordingly, Defendant's Motion for Compassionate Release (ECF No. 573) is DENIED.

The Clerk is DIRECTED to send a copy of this Memorandum Order to all counsel of record.

It is so ORDERED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **Nov. 30, 2021**
Richmond, Virginia